# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE STEVEN ANDERSON, et al., | Case No. 1:14-cv-01599-TLN-SAB |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL |
| v. | (ECF No. 28) |
| JOHN MARSH, | |
| Defendant. | |

Currently before the Court is the parties' joint statement of discovery disagreement and Plaintiff's request to seal documents pursuant to Local Rule 141.  The Court heard oral argument on December 16, 2015. Counsel Karen L. Snell appeared for Plaintiffs, and counsel Wilfred T. Fong appeared for Defendants.  Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the December 16, 2015 hearing, as well as the Court's file, the Court issues the following order.

**I.**

**BACKGROUND**

About 12:46 p.m. on October 27, 2012, California Highway Patrol Officer John Marsh observed a green sedan speeding on Highway 180 in Fresno, California.  (First Am. Compl. ¶ 10, ECF No. 23.)  Officer Marsh gave chase to the vehicle and activated his lights and siren.  (Id. at ¶ 11.)  The vehicle did not stop, but exited the freeway and attempted to make a right turn.  (Id.)

Due to the rate of speed the driver was unable to execute the turn and skidded across the avenue colliding with a chain link fence. (Id.) The collision caused major damage to the front end of the vehicle and both front tires were flattened. (Id.) Officer Marsh pulled his vehicle behind the subject vehicle. (Id.)

Officer Marsh exited his vehicle with his firearm drawn and quickly approached the driver's side of the vehicle. (Id. at ¶ 12.) Ultimately, Officer Marsh fired two shots from his weapon striking the driver of the vehicle in the upper left back. (Id. at ¶ 14.) The driver was permanently paralyzed from the chest down. (Id. at ¶ 15.) The driver died from complications of his injuries on June 5, 2015. (Id. at ¶ 16.) His wife and surviving children bring this action alleging excessive force in violation of the Fourth Amendment, deprivation of familial companionship and society in violation of the Fourteenth Amendment, supervisory liability, and state law claims.

Plaintiffs filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 14, 2014. (ECF No. 1.) A stipulated protective order was entered on February 13, 2015. (ECF NO. 17.) Currently, the action is proceeding on the first amended complaint filed October 16, 2015. (ECF No. 23.)

On December 9, 2015, the parties filed a joint statement re discovery agreement and Plaintiff filed a request to file documents under seal. (ECF Nos. 27, 28.) On December 10, 2015, Plaintiffs filed a motion to compel discovery.

## II.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be

1 discoverable." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Rule 34 of the Federal Rule of Civil Procedure provides that a party may serve upon any other party a request for production of any tangible thing within the party's possession, custody, and control that is within the scope of Rule 26. Fed. R. Civ. P. 34(a)(1)(B). The party receiving the request has thirty days in which to respond. Fed. R. Civ. P. 34(b)(2). A party may move for an order compelling production where the opposing party fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3(B)(iv).

## III.

## DISCUSSION

In this instance, the parties are disputing whether the ultimate opinion on whether Officer Marsh's conduct violated CHP procedures is entitled to protection under the attorney client or work product privilege. At issue here are Plaintiff's requests for production of documents concerning the memorandum of findings for the officer involved shooting, and a CHP policy and procedure evaluation report; and whether Officer Marsh's supervisor should be compelled to answer questions regarding his findings on whether Officer Marsh violated policy or performed properly during the incident. Defendants have produced redacted copies of the documents, Plaintiffs seek an order compelling Defendants to produce unredacted copies of the documents and to require Officer Marsh's supervisor to respond to questions on his opinion and findings during the investigation of the matter.

Initially, Defendants contend that the Court should apply state law to the state law claims in this action. However, in a civil rights action brought under the federal statutes the questions of privilege are to be resolved under federal law. Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987). Where a litigant has brought federal question claims and pendent state law claims, the federal law of privilege applies. Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005). However, as a matter of comity, the federal court should attempt to ascertain the interests that inspire any relevant state doctrine and take into consideration the views of state

authorities about the importance of those interests. Kelly, 114 F.R.D. at 656. The ultimate determination regarding the weight to be given to the state interest resides with the federal court. Id.

### A. Relevance of Requested Discovery

While Defendants did not raise relevancy in the joint statement, at the December 16, 2015 hearing, Defendants argued that the opinion of Officer Marsh's supervisor regarding whether he violated procedure during the incident is not relevant in this action.

Here, Plaintiff alleges that the use of force was excessive in violation of the Fourth Amendment. "The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.' " Terry v. Ohio, 392 U.S. 1, 8 (1968). The Constitution does not forbid all searches and seizures, but unreasonable searches and seizures. Terry, 392 U.S. at 9.

In this action, the trier of fact will be required to decide whether Officer Marsh's actions during this incident constituted excessive force in violation of the Fourth Amendment. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Wilkinson v. Torres, 610 F.3d 546, 550 (9th Cir. 2010) (quoting Graham v. Conner, 490 U.S. 386, 396 (1989)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

As previously stated, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In this action, Plaintiffs are alleging that Officer Marsh did not wait for backup which arrived shortly after the crash, but immediately proceeded to confront the driver of the vehicle after the accident. (ECF No. 23 at ¶ 12.) Plaintiffs argue that Officer Marsh violated California Highway Patrol policy by following the vehicle too

1   closely and did not take cover and wait for backup as the policy instructs. (ECF No. 27 at 7.[1])

2   A finding by the trier of fact that the policy required Officer Marsh to wait for backup in the circumstances that he confronted on October 27, 2012, could influence the determination of whether the use of force was necessary or excessive. Since the issue of whether Officer Marsh violated the policy could influence the decision on whether the use of force was necessary, it is of consequence in determining the action. Therefore, whether Officer Marsh violated departmental policy could be considered by the trier of fact in determining the reasonableness of the need for and use of force during this incident. The Court finds that the requested discovery is relevant in this action.

The Court shall next consider whether the requested discovery is entitled to protection under the attorney-client privilege or work product doctrine.[2]

**B.    Attorney-Client Privilege**

Defendants argue that the discovery at issue in this action is protected by attorney-client privilege. Plaintiffs respond that this argument has been rejected by other courts, and the documents at issue here are the same type of "presumptively discoverable" reports that are ordered disclosed by other courts. Defendants respond that the cases cited by Plaintiffs did not address the claim of attorney-client privilege.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures." In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992) (internal citations omitted). Attorney client privilege exists "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] By holding it is relevant does not mean that the report itself and/or the conclusions and opinions found therein are per se admissible. The proponent of the evidence would be required to lay the necessary foundation for admission of any such evidence, whether it is the report itself and/or statements found within the report. Fed. R. Evid. 104.

1  protection be waived." United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011); United States
2  v. Martin, 278 F.3d 988, 999 (9th Cir. 2002), as amended on denial of reh'g (Mar. 13, 2002).
3  The attorney client privilege can extend to communications with third parties who have been
4  engaged to assist the attorney in providing legal advice. Richey, 632 F.3d at 566.

5        The party asserting the privilege has the burden of proving that the privilege applies to a
6  given set of documents or communications. Tornay v. United States, 840 F.2d 1424, 1426 (9th
7  Cir. 1988); Martin, 974 F.2d at 1070.  The attorney-client privilege applies "only when necessary
8  to effectuate its limited purpose of encouraging complete disclosure by the client." Tornay, 840
9  F.2d at 1428.

10        Defendant contends that the memorandum of findings and policy/procedures evaluation
11  report are entitled to attorney client protection because they are prepared as part of the
12  departmental investigation to reconstruct the employee involved shooting incident and are
13  forwarded to general counsel marked confidential attorney-client communications.  For the
14  following reasons, the Court finds that Defendants have failed to meet their burden of
15  demonstrating that the discovery at issue here is protected by the attorney-client privilege.

16        According to departmental policy there are two types of investigations into a shooting
17  incident: a criminal investigation and a departmental investigation.  (ECF No. 27-3 at 4.)  The
18  policy provides that a departmental investigation conducted by the Department to factually
19  reconstruct the employee-involved shooting incident shall result in a shooting incident report,
20  policy/procedures evaluation report, and memorandum of findings for administrative review.
21  (Id.)  Two of these departmental investigation reports are the documents that are at issue here:
22  the policy/procedures evaluation report and the memorandum of findings.

23        The policy/procedures evaluation report shall contain the immediate commander's
24  evaluation of the involved officer's actions regarding departmental policy and officer safety
25  techniques and comments regarding the legal justification for the discharge of the firearm.  (ECF
26  No. 27-3 at 5.)  The memorandum of findings, which is drafted by the commander and attached
27  to the policy/procedures evaluation report, shall include comments regarding the justification for
28  the discharge of the firearm and the course of action contemplated or recommended by the

immediate commander. (Id.) This memorandum is then reviewed by the division and the appropriate assistant commander. The memorandum is then issued to the employees involved in the shooting incident. (Id.)

The reports are provided to general counsel for review. General counsel is then to notify the assistant commissioner of his concurrence or, if general counsel does not agree, arrangements are to be made for further discussion and review of the incident. (ECF No. 27-3 at 7.)

These reports were created by and contain the opinion of Sgt. DeChamplain who is not an attorney. The reports are not created for the purpose of obtaining legal advice, but as part of the investigation into the officer involved shooting. The purpose of the report is to determine what occurred during the incident and for the investigating official to review and critique the officer's conduct. The reports were provided to general counsel for review of the underlying findings. While any communication from general counsel regarding his review of the reports would fall within the attorney-client privilege, the fact that general counsel reviews the documents created during the investigation is not sufficient to entitle them to attorney-client privilege.

Additionally, the regulations provide that at the conclusion of the investigation the reports are provided to the employees involved. The fact that the reports are provided to the involved employees after the investigation demonstrates that they are not made as confidential communication to the attorney. (ECF No. 27-3 at 8.) It is vital to the attorney-client privilege that "the communication be *made in confidence* for the purpose of obtaining *legal advice from the lawyer*. United States v. Gurtner, 474 F.2d 297, 298 (9th Cir. 1973) (emphasis in original). As defense counsel stated at the December 16, 2015 hearing, these findings could be used to impose discipline on the employee. Should that occur, the employee would be entitled to challenge the discipline imposed due to the findings through the union grievance procedures. This is further support for the finding that the report is not confidential communication to the attorney as it would be considered during any challenge to discipline imposed due to findings included in the report.

Other courts have come to a similar conclusion that investigations are not subject to attorney-client privilege. See Griffith v. Davis, 161 F.R.D. 687, 696 (C.D. Cal. 1995) (no

reasonable expectation of confidentiality in statements made during investigation that were intended to be disclosed to others); Gonzales v. Mun. Court, 67 Cal. App. 3d 111, 120 (Ct. App. 1977) (testimony that could be used in disciplinary proceedings not covered by attorney-client privilege); Jackson v. County of Sacramento, 175 F.R.D. 653, 657 (E.D. Cal. 1997) (investigation into reports of police brutality not entitled to attorney-client privilege); Medina v. County of San Diego, No. 08cv1252 BAS (RBB), 2014 WL 4793026, at *25 (S.D. Cal. Sept. 25, 2014) (memo to office of general counsel and vehicle accident report not entitled to attorney-client privilege).[3]

Finally, the attorney-client privilege applies "only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client." Tornay, 840 F.2d at 1428. Finding attorney-client privilege in the circumstances presented here, an internal affairs investigation into an officer related shooting, would not serve this limited purpose of encouraging complete disclosure by the client. Defendants here seek to apply attorney-client privilege to the opinion of the officer's supervisor regarding whether the officer violated departmental policy during the incident. This is not the type of communication that the attorney-client privilege is designed to protect. The Court finds that Defendants have not met their burden

---

[3] As Defendants admitted during the December 16, 2015 hearing, they were only able to find three cases which refused to allow discovery of internal investigation reports. In Mueller v. Walker, 124 F.R.D. 654 (D. Or. 1989), the court stated that the defendants in a civil rights action were not required to produce portions of the police department's internal affairs reports that contain evaluative summaries, disciplinary recommendations, and intra-departmental memoranda regarding discipline finding they were protected by governmental privilege. 124 F.R.D. at 657. However, this is at odds with numerous courts which have ordered discovery of such records where the privilege was claimed recognizing that Cal. Evid.Code § 1045 strikes the state balance in favor of disclosing internal investigations pertaining to the manner in which a peace officer performed his or her duties, so long as they are relevant to pending litigation. Hallon v. City of Stockton, No. CIV S-11-0462 GEB, 2012 WL 394200, at *6 (E.D. Cal. Feb. 6, 2012). Deocampo v. City of Vallejo, No. CIV.S.06-1283WBS GGH, 2007 WL 1589541, at *6 (E.D. Cal. June 1, 2007); see also Miller v. Pancucci, 141 F.R.D. 292, 301 (C.D. Cal. 1992) (applying federal law to internal investigatory reports).

In Hillblom v. County of Fresno, No. 1:07-cv-01467-LJO-SMS, 2009 WL 3642772 (E.D. Cal. Oct. 30, 2009), the court stated without any analysis that the ultimate opinions and conclusions of any and all investigating officers regarding internal affairs investigations was not discoverable. 2009 WL 3642772, at *1. Finally, in Martinez v. Allison, No. 1:11-cv-01749-RRB, 2014 WL 530556 (E.D. Cal. Oct. 15, 2014), the court clarified in a footnote that the ruling on discovery requests "applies solely to statements made by the correctional officer the subject of the investigation and any percipient witnesses to the event(s). It does not extend to any comments, opinions, analyses, or findings by any official conducting, reviewing, or otherwise participating in the investigation, nor should be construed as so extending." 2014 WL 5305566, at *4. None of these cases provide any reasoning that would be applicable to the issues addressed herein.

of demonstrating that the documents and testimony at issue here are covered by the attorney-client privilege.

### C. Work Product Doctrine

Defendants also argue that the discovery is entitled to protection under the work product doctrine. The work product doctrine is not a privilege but a qualified immunity that protects documents and tangible things from being disclosed during discovery that have been prepared by a party or his representative in anticipation of litigation. Miller v. Pancucci, 141 F.R.D. 292, 303 (C.D. Cal. 1992). The federal work product doctrine was established in Hickman v. Taylor, 329 U.S. 495 (1947) and is now codified in Rule 26 of the Federal Rules of Civil Procedure. Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003). Rule 26(b)(3)(A) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." If a court orders production of such materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The party who is asserting the work product privilege bears the burden of proving that the materials withheld meet the standards established to be qualified as work product. Garcia, 214 F.R.D. at 591. The party seeking to withhold documents on the ground of work product privilege must show that the materials are: "1) documents and tangible things; 2) prepared in anticipation of litigation or for trial; and, 3) the documents or tangible things were prepared by or for the party or the attorney asserting the privilege." Id. If the privilege is found to apply, then the burden shifts to the party seeking discovery to show that "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(B)(ii); Garcia, 214 F.R.D. at 591.

While Defendants argue that the work product doctrine should apply because it does not matter whether anticipation of litigation is the primary or secondary motivation for preparing the documents, the work product doctrine does not protect materials that are prepared in the ordinary course of business. Griffith, 161 F.R.D. at 698. To be protected by the doctrine, the primary

1 motivating purpose behind the creation of the materials must be to aid in possible future
2 litigation. Id. Where a document serves a dual purpose, then the "because of" test is used to
3 determine if it is covered by the doctrine. Richey, 632 F.3d at 568.

4  "Dual purpose documents are deemed prepared because of litigation if 'in light of the
5 nature of the document and the factual situation in the particular case, the document can be fairly
6 said to have been prepared or obtained because of the prospect of litigation.' " Id. (quoting In re
7 Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt., 357 F.3d 900, 907 (2004)). In applying
8 this standard, courts are required to consider "the totality of the circumstances and determine
9 whether the document was created because of anticipated litigation, and would not have been
10 created in substantially similar form but for the prospect of litigation." Richey, 632 F.3d at 568
11 (internal punctuation and citation omitted).

12  Here, the documents at issue are routinely created regardless of whether there would be
13 litigation regarding the incident. The regulations demonstrate that the purpose of creating the
14 documents is to determine if the officer was legally justified in shooting, complied with
15 departmental policy, and if any action should be taken by the immediate supervisor. (ECF No.
16 27-3 at 8.) This includes a recommended course of action by the employee's supervisor. (Id. at
17 5.) Therefore, these documents would have been created in substantially similar form regardless
18 of the prospect of litigation. Defendants have not met their burden of establishing that the
19 documents were prepared in anticipation of litigation and the work product doctrine does not
20 provide a basis for Defendants to withhold the requested discovery.

21  **D.  Defendants are Required to Produce Supplemental Responses**

22  For the reasons discussed herein, the Court finds that documents and testimony sought by
23 Plaintiffs are not entitled to attorney-client privilege or work product protection. Defendants
24 shall be required to provide supplemental responses to the disputed requests and shall produce
25 unredacted copies of the documents.

26  Further, for the same reasons the documents are not entitled to protection, the testimony
27 of Sgt. DeChamplain is not entitled to protection. Defendants shall produce Sgt. DeChamplain
28 for further deposition and he shall answer questions pertaining to his opinions and conclusions

set forth in the memorandum of findings and policy/procedures evaluation report.

### E. Request to Seal

Also before the Court is the parties' joint request to seal documents in conjunction with the current discovery dispute.[4] Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 & n. 7 (1978)); see also Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210 (9th Cir. 2002) ("It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public.). This right of public access is not absolute however. In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig., 686 F.3d 1115, 1119 (9th Cir. 2012).

Unless a document is one that has traditionally been kept secret, there is a "strong presumption in favor of access." Kamakana, 447 F.3d at 1178. The Ninth Circuit has found that this presumption is rebutted where the documents are attached to a nondispositive motion, and a particularized showing under the good cause standard for each document will suffice to warrant the sealing of discovery material attached to nondispositive motions. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003); Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2009). Good cause exists where the party seeking protection shows that specific prejudice or harm will result if no protective order is granted. Phillips, 307 F.3d at 1210-11. Broad allegations of harm that are unsubstantiated by specific examples or articulated reasoning do not satisfy the good cause standard. Foltz, 331 F.3d at 1130.

In this instance, there are two types of documents which are sought to be filed under seal. The first is Defendant's response to a request for production of documents and the responsive documents. The second is the deposition of Sgt. Ronald A. DeChamplain who investigated the incident at issue in this action. The parties contend that the documents should be filed under seal because they are attorney-client communication or work product and have been designated as

---

[4] During the December 16, 2015 hearing the parties agreed that the Court could conduct an in camera review of the amended response by Defendant to the request for production of documents. The Court has reviewed the documents in camera in deciding the motions before it.

confidential by Defendants and are therefore covered by the protective order entered into by the parties.

As discussed herein, the Court finds that the documents are not entitled to attorney-client privilege or work product protection. Further, neither the parties' agreement that documents shall be filed under seal, nor a party designating documents as confidential, is sufficient to meet the good cause standard. Accordingly, the request to seal is denied.

## IV.
## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel is GRANTED;
2. Within fourteen days of the date of service of this order, Defendants shall serve supplemental responses producing unredacted copies of the memorandum of findings and policy/procedures evaluation report; and
3. On a date and time agreeable to the parties, Defendants shall produce Sgt. DeChamplain for further deposition to answer questions regarding the memorandum of findings and policy/procedures evaluation report.

IT IS SO ORDERED.

Dated: __December 17, 2015__

UNITED STATES MAGISTRATE JUDGE